2007 OK 21

**OKLAHOMA CITY ZOOLOGICAL TRUST, A Public Trust, Plaintiff/Appellee,**

v.

**STATE of Oklahoma ex rel. PUBLIC EMPLOYEES RELATIONS BOARD, A State Agency, Defendant,**

**The American Federation of State, County and Municipal Employees Union, Local 2406, AFL–CIO, Defendant/Appellant.**

No. 101,978.

Supreme Court of Oklahoma.

April 10, 2007.

Kenneth Dale Jordan, Diane Lewis, Marsha D. Harrod, Oklahoma City, OK, for plaintiff/appellee Oklahoma City Zoological Trust.

W.A. Drew Edmondson, Attorney General of Oklahoma, Sandra D. Rinehart, Senior Assistant Attorney General, Oklahoma City, OK, for defendant, Public Employees Relations Board.

James R. Moore, Sue Wycoff, Chanda R. Graham, Moore & Vernier, Oklahoma City, OK, for defendant/appellant, American Federation of State, County and Municipal Employees.

OPALA, J.

¶ 1 The dispositive issue here is whether Oklahoma City may be considered to stand in the status of legal employer *vis-a-vis* the employees of the Oklahoma City Zoological Trust, a public trust. **The trial court's answer was in the negative and today we reaffirm its correctness.**

## I.

### ANATOMY OF LITIGATION

¶ 2 On 1 November 2004, the same day the Oklahoma Municipal Employee Collective Bargaining Act (Act)[1] went into effect, the American Federation of State, County, and Municipal Employees (AFSCME) petitioned the Public Employees Relations Board (PERB) to determine the appropriate bargaining unit for Oklahoma City Zoological Trust (Zoo Trust or Trust) employees. The Trust brought on 9 November 2004 this action against PERB and AFSCME for declaratory and injunctive relief from the Act's application. AFSCME moved to dismiss, arguing that the Trust failed to exhaust its administrative remedies.

¶ 3 The district court found on 24 March 2005 that the Zoo Trust was not a municipal employer within the meaning of the Act, PERB would be exceeding its authority if it were to certify AFSCME as the exclusive bargaining representative of Trust employees, and the Trust was entitled to the injunctive relief it sought. AFSCME appealed.

¶ 4 AFSCME argues here the Trust has not exhausted its administrative remedies, the district court erred in declaring the Act did not apply to the Trust, the Trust was created by Oklahoma City (City), and the Trust's arguments are contrary to the intent of the Act. The Trust argues that exhaustion of administrative remedies does not apply here, the Act was never intended to be imposed upon the Trust, nor is the latter entity an "authority" created by the City.

## II.

### STANDARD OF REVIEW

¶ 5 "An appellate court's standard of review is not mere ritualistic legal liturgy. It defines the permissible sweep of critical testing to be undertaken by a reviewing court."[2] A declaratory judgment of a competent court is "reviewable in the same man-

---

1. 11 O.S. Supp.2004 § 51–200 *et seq.; see also City of Enid v. Public Employees Relations Bd.,* 2006 OK 16, 133 P.3d 281 (deciding the constitutionality of the Act).

2. *Capshaw v. Gulf Ins. Co.,* 2005 OK 5, ¶ 8, 107 P.3d 595, 600 (citing *Easley v. Cromartie,* 532 U.S. 234, 260, 121 S.Ct. 1452, 1471, 149 L.Ed.2d 430 (2001)(Thomas, J., dissenting)).

ner as other judgments." [3] We hence review the record to determine if the trial court abused its discretion in construing the statute in the manner in which it did or its decision is contrary to the evidence adduced.[4] An abuse of discretion takes place when the decision is based on an erroneous interpretation of the law, on factual findings that are unsupported by proof, or represents an unreasonable judgment in weighing relevant factors.[5] This court will decline to affirm only those trial court's decisions which do not conform to the law's standard of correctness.

¶ 6 The Legislature's intent in passing the law submitted for judicial testing governs its construction.[6] The language of an entire act is afforded a "reasonable and sensible construction" [7] in a manner consistent with other statutes.[8] It is presumed "the Legislature expressed its intent in the statute ... and ... intended what it expressed." [9] When the language of the statute is plain, it will be followed without further inquiry. When further inquiry is needed, this court is "not free to rewrite the statute.... [T]he sole function of the courts—at least where the disposition [called for] by the text is not absurd—is to enforce it [the statute] according to its terms." [10]

Courts must "if possible, construe a statute to give every word some operative effect" [11] and vigorously "resist reading words or elements into a statute that do not appear on its face".[12] The legislature expresses its purpose by words. "It is for [this court] to ascertain [the meaning of these words]—neither to add nor to subtract, neither to delete nor to distort." [13] This court is thus without authority to supplement by judicial interpretation the classification of persons subject to statutory authority "but must accord the language used by the Legislature, it being unambiguous, ... fair, reasonable, plain and ordinary import or meaning" [14]

## III.

## THE ZOO TRUST WAS NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES BEFORE BRINGING ITS DECLARATORY JUDGMENT SUIT

¶ 7 The Trust need not exhaust any administrative remedies. Ordinarily, a plaintiff is required to pursue all available administrative relief before bringing a court action.[15] The failure to do so is fatal.[16] But

---

3. *City of Chandler v. State ex rel. Dept. of Human Services*, 1992 OK 137, ¶ 9, 839 P.2d 1352, 1354 (citing the terms of what is now 12 O.S.2001 § 1654).

4. *See Id.; Brown ex rel. Brown v. Oklahoma Secondary School Activities Ass'n.*, 2005 OK 88, ¶ 11, 125 P.3d 1219, 1225.

5. *Star Fruits S.N.C. v. U.S.*, 393 F.3d 1277, 1281 (Fed.Cir.2005).

6. *City of Chandler*, *supra* note 3, at ¶ 10, at 1354.

7. *Udall v. Udall*, 1980 OK 99, ¶ 11, 613 P.2d 742, 745.

8. *See generally* Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons about Statutes are to Be Construed*, 3 Vand. L.Rev. 395 (1950) (explaining the "thrust" and "parry" of the canons of construction).

9. *City of Chandler*, *supra* note 3, at ¶ 10, at 1354 (citing *Darnell v. Chrysler Corp.*, 1984 OK 57, 687 P.2d 132).

10. *Dodd v. U.S.*, 545 U.S. 353, 359, 125 S.Ct. 2478, 162 L.Ed.2d 343 (2005) (internal citations and quotations omitted).

11. *Cooper Industries, Inc. v. Aviall Services, Inc.* 543 U.S. 157, 167, 125 S.Ct. 577, 160 L.E.2d 548 (2004) (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 35–36, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992)).

12. *Bates v. U.S.*, 522 U.S. 23, 29, 118 S.Ct. 285, 139 L.E.2d 215 (1997).

13. *62 Cases, More or Less, Each Containing Six Jars of Jam v. U.S.*, 340 U.S. 593, 596, 71 S.Ct. 515, 95 L.Ed. 566 (1951).

14. *Murphy v. State Election Bd.*, 1950 OK 141, ¶ 11, 218 P.2d 917, 919; *See also Dierks v. Walsh*, 1950 OK 138, ¶ 24, 218 P.2d 920, 925 ("It is not within the province of the court to question the wisdom or the necessity of an Act of the Legislature.")

15. *See Waste Connections, Inc. v. Oklahoma Department of Environmental Quality*, 2002 OK 94, ¶ 7, 61 P.3d 219, 223 (giving an overview of relevant law).

16. This court has previously stated that:

There are several reasons for the rule of exhaustion of administrative remedies. These

one need not exhaust administrative remedies where, as here, "the power of the agency to act at all under the statutory scheme it is charged with administering" is being challenged.[17] Because the Trust challenges PERB's jurisdiction over its personnel, it is not required to exhaust administrative remedies. The district court did not lack adjudicative power over the Trust's declaratory suit.

## IV.

### THE ZOO TRUST IS NOT SUBJECT TO THE TERMS OF THE ACT

 ¶ 8 The express terms of the Act, as well as its stated intent, make clear that it is to apply only to those entities which the State of Oklahoma or a municipality **created and controls.**[18] The Trust is recognized by law as a **separate legal entity** whose sole connection with Oklahoma City is that the latter is the Trust's beneficiary. That status gives the City absolutely no *de jure* **control** over the operations of the Trust. No *de facto* City **control** of the Zoo operations was ever suggested below and none is asserted before this court.

> include the expertise of the agency in the subject matter area and notions of judicial efficiency; ... [the fulfillment of] legislative purpose in granting authority to an agency by discouraging frequent deliberate flouting of administrative procedure; ... protect[ing] agency autonomy by allowing the agency in the first instance to apply its expertise and correct its errors; ... aid[ing] judicial review by allowing parties to develop material facts in agency proceedings; ... and promot[ing] judicial economy by avoiding repetition of judicial and administrative factfinding and perhaps the necessity for judicial involvement.
> *Atkinson v. Halliburton Co.*, 1995 OK 104, ¶ 12, 905 P.2d 772, 774–75(internal citations and quotations omitted).

17. *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n,* 1988 OK 117, ¶ 12, 764 P.2d 172, 181; *see Marley v. Cannon,* 1980 OK 147, ¶¶ 16–21, 618 P.2d 401, 406–407 (citing *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938)) (holding that neither the Oklahoma Securities Commission nor the Administrator of the Oklahoma Department of Securities had the statutory power to issue cease and desist orders against a business entity deemed to be in violation of the Oklahoma Securities Act, 71 O.S. Supp.2004 § 1 *et seq.*)

¶ 9 The provisions of 11 O.S. Supp.2004 § 51–202(12)—which set out a city's departments—govern **solely** those **municipal employers** whom the Act defines as "authorities, agencies and boards **created** by such municipalities." It is argued by AFSCME that, regardless of the fact that the term "public trust" is not used in any part of the Act's text, the Zoo Trust is indeed subject to the terms of the Act because it is an "authority" or "agency" "created by such municipalities." **We disagree.** It is crystal-clear that the Trust is neither a municipal authority nor was it created by the City.[19] The trial court clearly did not err in ruling that the Trust is not subject to the terms of the Act.

### A.

### The Trust Was Not Created By Its Beneficiary

 ¶ 10 The Trust was not created by the City but by its trustors.[20] The Oklahoma Zoological Society clearly is the trustor in the documents creating the trust at issue here and the City merely its beneficiary. To hold the City is the trustor as well as the beneficiary would confuse and distort the distinction between the two. The City's ac-

18. The Act is designed to afford state and municipal employees the right to collective bargaining for employment benefits, which implies that only **employees** of the state or municipality enjoy such right under the Act. The Act clearly contemplates its application to "entities created" by the state or municipality. Thus, a two-step analysis is called for to determine whether an entity is subject to the terms of the Act: (1) whether the state or municipality has control over the entity; and (2) whether the entity was created by the State or a municipality. Because the right to control is the *sine qua non* element of employment status, *see infra* note 24, we hold that its existence is dispositive of the determination whether an entity is subject to the terms of the Act.

19. AFSCME argues that under Oklahoma law the Trust is considered an "authority". We disagree. The Trust exercises **no** functions for the municipal government of the City. Nor is there any showing here that the City has ever entrusted to the Trust the performance of any of its own municipal government functions.

20. 60 O.S.2001 § 175.3(B) ("Trustor means the maker, **creator,** donor, **settlor,** grantor, of a trust ...") (emphasis added).

quiescence in the creation of the Trust does not legally make it the creator of the Trust.[21] The provisions of 60 **O.S. Supp.2004 § 176 neither state nor imply that public trusts are to be viewed as created either by the State or by a municipality.**[22]

## B.

### The City Enjoys No *De Jure* Control Over The Trust

¶ 11 Neither the trust document nor any statutory authority confers upon the City the right to control the Trust.[23] The right to control constitutes a *sine qua non* element of employment status. Without its presence no employment relation may exist in contemplation of law.[24] The trust instrument itself vests exclusive control over the trust in its board of trustees, not in the beneficiary City. The trust document also vests in the trustee the **sole authority** to hire and discharge Zoo employees and to make and perform contracts of any kind. Statutory law makes clear that the instrument creating a trust exclusively controls the relationship between the beneficiary and trustee[25] and "... a

public trust ... shall be presumed **for all purposes of Oklahoma law** to [e]xist as a legal entity separate and distinct from the settlor and from the governmental entity that is its beneficiary...."[26] The necessary element of *de jure* control over Trust's employees is simply absent from the City.

## C.

### The Trust Is Free From *De Facto* Control By The City

¶ 12 The record is devoid of any facts to suggest the City exercises control over the Zoo Trust's employees. The trust instrument itself does not confer any control upon the City.[27]

¶ 13 The Trust's acceptance by the City confers on the latter no operational powers over the Trust which could be exercised before the Trust's legal dissolution. **The record does not hence support an employment relationship between the Zoo Trust's employees and the City. The latter neither possesses nor exercises *de facto* or *de jure* control over the Trust's employees.**

---

**21.** *See e.g. San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee,* 483 U.S. 522, 543, 107 S.Ct. 2971, 2984–2985, 97 L.Ed.2d 427 (1987) ("The fact that Congress granted [a corporation] a corporate charter does not render [it] a Government agent.")

**22.** *But see* 60 O.S.2001 § 179, which has remained unchanged since its inception and states that any trustee of a public trust "shall be [deemed] an agency of the state and the regularly constituted authority of the beneficiary for the performance of the functions for which the trust shall have been created." Section 179 is intended **only** to "absolve from liability the members of [public trusts] as individuals." *McKosky v. Town of Talihina,* 1977 OK CIV APP 27, ¶ 13, 581 P.2d 482, 485. Except for tort liability purposes, a public trust that has no government functions to perform is not considered a government agency.

**23.** *See State v. Garrison,* 1959 OK 260, ¶ 10, 348 P.2d 859, 862 ("[a public] trust is a legal entity separate and apart from the State and the political subdivisions of the State ..."); *see also* 60 O.S. Supp.2003 § 176.1(A)(2) ("a public trust ... shall be presumed **for all purposes of Oklahoma law** to ... [e]xist as a legal entity separate and distinct from the settlor and from the governmental entity that is its beneficiary ...") (emphasis added).

**24.** *See McGee v. Alexander,* 2001 OK 78, ¶ 29, 37 P.3d 800, 807(citing *Garrison v. Bechtel Corp.,* 1995 OK 2, 889 P.2d 273 ) ("An essential element of an agency relationship is that the principal has some degree of control over the conduct and activities of the agent"); *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Authority,* 991 F.2d 935, 939–40 (1st Cir.1993) (whether the state exerts control over the agency is a key factor in determining whether an entity is an appendage of the State); *Brewer v. Bama Pie, Inc.,* 1964 OK 58, ¶ 7, 390 P.2d 500, 502–503("The decisive test ... is the right to control the physical details of the work ... [and] may be established either by ... formal contract or by conduct of the parties ..."); *see also Haworth v. Central Nat. Bank of Oklahoma City,* 1989 OK 20, ¶ 10, 769 P.2d 740, 743; *Agee v. Gant,* 1966 OK 31, ¶ 20, 412 P.2d 155, 160.

**25.** *See* 60 O.S.2001 § 178(A) ("The instrument or will creating ... [a] trust ... in all ... respects ... will be controlling.")

**26.** 60 O.S. Supp.2003 § 176.1(A)(2).

**27.** *See San Francisco Arts & Athletics, Inc., supra* note 21, at FN 27.

¶ 14 This court is mindful that a public trust may be declared to be "illusory" [28] upon a judicial finding of a sham fabricated by one to circumvent one's obligations under the Act. An illusory trust might be declared subject to the terms of the Act. Upon this record, the Trust does not exhibit any features that would suggest it is merely an illusory entity.

## V.

## SUMMARY

¶ 15 **The Act is clear in its purview—it applies solely to entities that a municipality created and controls. We are unwilling to ignore all the time-tested legal principles in order to make the Zoo Trust an integrated appendage of the City's municipal government. As an entity separate from the City's municipal government, neither the Zoo Trust nor anyone in its service may be accorded the status of a City employee for purposes of the Act.**

¶ 16 **The self-governed and self-supported Zoo Trust is a separate legal entity that is entirely free of both *de jure* and *de facto* control by the City's municipal government.** The Zoo Trust is hence not subject to compliance with the terms of the Oklahoma Municipal Employee Collective Bargaining Act. **The trial court's judgment, which declares the Zoo Trust to be an autonomous public trust entity and not a mere appendage of the City's municipal government structure, does not offend the law's standard of correctness. It is hence affirmed.**

¶ 17 LAVENDER, HARGRAVE, OPALA, WATT, TAYLOR and COLBERT, JJ., Concur.

¶ 18 WINCHESTER, C.J. and KAUGER, J., Concur in result.

¶ 19 EDMONDSON, V.C.J., Dissents.

**28.** *See generally Roberts v. South Oklahoma City Hosp. Trust,* 1986 OK 52, 742 P.2d 1077 (declaring a public trust to be illusory and thus not a political subdivision within the meaning of the Oklahoma Government Tort Claims Act). Factors to be considered are: (1) whether the trust serves a public function; (2) whether there is a direct monetary benefit to the State or municipality; (3) whether the trust is funded by the State or municipality; and (4) whether the State or municipality is consulted in the running of the trust or the trust is outside the parameters of State- or municipality-sponsored policy.